OPINION
{¶ 1} Defendant/Appellant Tamara J. Reid (hereafter Appellant) appeals from the final judgment of the Clark County Court of Common Pleas sentencing Appellant to the statutory maximum five year prison term for her aggravated theft conviction. For the reasons that follow, we affirm.
 {¶ 2} Appellant was employed with Adaptable Office Interiors (hereafter AOI) from June 1999 until November 2003. During the course of her employment with AOI, Appellant wrote a series of checks drafted from an AOI business account which she used to convert business funds for her personal use. Appellant misrepresented to others that such checks were for legitimate business purposes. Appellant also obtained a credit card in AOI's name which she used to make purchases for her own use. Appellant paid the credit card bill using checks drafted from AOI's business account. The total value of the misappropriated funds totals $280,000.
 {¶ 3} On August 19, 2004, Appellant was indicted for aggravated theft and tampering with evidence. Pursuant to a plea negotiation with Appellee State of Ohio (hereafter the State), Appellant entered a guilty plea to the aggravated theft charge on February 7, 2005 and the tampering with evidence charge was dismissed.
 {¶ 4} At Appellant's sentencing hearing, the State advised the trial court of several aggravating factors it believed warranted a harsher sentence. First, the State indicated that Appellant had several prior theft offenses on her record. Second, the State represented that the primary victim, the business owner, suffered serious economic harm as a result of the offense. Third, the State noted that Appellant had occupied a position of trust within the company which she used to facilitate the offense. The business owner also addressed these aggravating factors, indicating that Appellant's conduct jeopardized a longstanding business association by nearly forcing the business to lay off its employees and cease operation.
 {¶ 5} Appellant's trial attorney presented several factors argued to mitigate her offense. First, Appellant's supervisors from the emergency shelter she worked at subsequent to leaving AOI spoke on Appellant's behalf. Both indicated that Appellant was a trusted, dependable, professional employee. Second, Appellant's husband Matt Reid also spoke on her behalf, indicating that she was a good wife and mother. Mr. Reid also expressed a desire to make the appropriate restitution.
 {¶ 6} Appellant's trial counsel also indicated a belief, based on a report from Appellant's therapist, that Appellant had a mental illness that contributed to her repeated incidences of theft. Appellant's counsel represented that Appellant's therapist had seen Appellant demonstrate progress. Furthermore, Appellant's counsel emphasized Mr. Reid's statements and the fact that Appellant has two teenage children living in her home. Moreover, Appellant's counsel pointed out that Appellant's supervisors would allow Appellant to continue in her present job should the trial court decline to impose a prison sentence. Appellant's counsel mentioned that Appellant had paid $7,500 in restitution but that a prison sentence would make continued restitution much more difficult.
 {¶ 7} Appellant addressed the trial court, indicating that she accepted responsibility and had been pursuing treatment. Appellant also said she desired to make full restitution and continue working at the shelter.
 {¶ 8} The trial court reviewed the R.C. 2929.12(B) factors that determine the seriousness of the offense on the record. The trial court mentioned the large amount of money taken, the position of trust Appellant had with the victim, the economic impact of Appellant's actions on the victim and the business, and the emotional stress the victim suffered. The trial court stated further, "it's hard to determine if there is any genuine remorse other than the fact that she may be looking at going back to prison." Upon weighing these factors, the trial court found that a minimum sentence would demean the seriousness of the offense.
 {¶ 9} The trial court also reviewed the R.C. 2929.12(C) factors to determine the likelihood of recidivism on the record. The trial court stated that Appellant had convictions for similar theft offenses in 1991 and 1996. Appellant received a sentence of probation for each offense. In 1998, Appellant was convicted of theft and forgery, which violated her probation from the 1996 case. As a result, she received a short prison term. The trial court further indicated that Appellant's instant offense began almost immediately after being released.
 {¶ 10} The trial court also considered Appellant's therapist's report, which indicated that Appellant resents having to follow others, liked to establish dominance, is capable of lying to get her way, was self-centered with a constant desire for attention, and showed a lack of empathy towards others. Despite these issues, the report did not indicate any severe pathology and represented that Appellant was now controlling her impulses and functioning properly in society.
 {¶ 11} The trial court emphasized that the offense was ongoing for over four years and it "appears to have stopped only because it came to light." Appellant had used the money for rent, utilities, necessities for the kids, etc., all of which Appellant and her husband could have paid themselves. Upon weighing these factors, the trial court concluded that Appellant posed the greatest likelihood of recidivism. As such, the trial court sentenced Appellant to five years in prison, the statutory maximum penalty for aggravated theft.
 {¶ 12} Appellant now appeals her sentence, arguing that her sentence is contrary to law and unsupported by the record. We disagree.
 {¶ 13} An appellate court will not disturb a sentence unless there exists clear and convincing evidence that the trial court abused its discretion and gave a defendant a sentence contrary to law. State v. Rose (Sept. 15, 1997), Clermont App. No. CA-96-1, 1-106. Clear and convincing evidence is evidence that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. State v.Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. Generally a trial court does not abuse its discretion when it imposes a sentence that is authorized by statute. State v. Quinn (1999),134 Ohio App.3d 459, 462, 731 N.E.2d 276, citing State v.Beasley (1984), 14 Ohio St.3d 74, 75, 471 N.E.2d 774.
 {¶ 14} A trial court must consider the sentencing scheme promulgated by the Ohio legislature in R.C. 2929.12 in order to determine if, in accordance with R.C. 2929.14(C) the offender both committed the worst form of the offense and poses the greatest likelihood of recidivism. Since the legislature chose to use the word "and" instead of "or" when drafting R.C. 2929.14(C), we interpret the statute as conjunctive and, therefore, that both findings are required in order for the trial court to sentence Appellant to the maximum prison term authorized for a felony three within its discretion.[1]
 {¶ 15} Appellant argues that the crime she committed was not the worst form of the offense because a theft of $280,000 is only 56% of the $500,000 amount governed by the felony three aggravated theft statute and because there was no physical harm to any persons or property as a result of this offense. Appellant further argues that the trial court improperly sentenced her to the maximum possible prison term. This argument lacks merit.
 {¶ 16} R.C. 2929.12(B) requires the trial court to consider several aggravating factors that can measure the relative seriousness of an offense, including whether the victim suffered serious physical, psychological, or economic harm as a result of the offense, whether the offender held a position of trust that facilitated the offense, and whether the offender's relationship with the victim facilitated the offense. R.C. 2929.12(B). R.C.2929.12(C) requires the trial court to consider several mitigating factors that weigh against the offense's seriousness, including that the offender did not cause or did not expect to cause physical harm to others or property. R.C. 2929.12(C)(3).
 {¶ 17} A trial court may impose a maximum sentence on an offender who has previously served a prison sentence if the trial court finds that the offense was the worst form of the offense under R.C. 2929.12(B). State v. Edmonson (1999),86 Ohio St.3d 324, 715 N.E.2d 131, 1999-Ohio-110. When a trial court imposes a maximum sentence, it is required to state its reasons for such a finding on the record at the sentencing hearing why it has found that the offense is the worst form of the offense. State v.Comer (2003), 99 Ohio St.3d 463, 478, 793 N.E.2d 473,2003-Ohio-4165. A trial court may find that an offender committed the worst form of the offense without using the exact phrase on the record. State v. Quinn, 134 Ohio App.3d at 463. The purpose of R.C. 2929.12(B) does not require "recitation of the exact words used in a statute in a talismanic ritual." State v. Ruby
(2002), 149 Ohio App.3d 541, 556-557, 778 N.E.2d 101,2002-Ohio-5381, citing State v. Kelly (2001),145 Ohio App.3d 277, 281, 762 N.E.2d 479. A reviewing court will view a trial court's finding that a crime was the worst form of the offense under the totality of the circumstances. State v. Wilson (May 26, 2000), Lake App. No. 98-L-267.
 {¶ 18} In this case, the trial court considered and sufficiently placed on the record its reasons for finding that Appellant's offense constituted the worst form of the offense. The trial court explained that Appellant's theft began not long after she became employed with AOI and entrusted with the company's finances. The theft continued for over four years and may only have ceased because it was discovered. In total, Appellant converted $280,000 of AOI's business funds for her own use.
 {¶ 19} Appellant argues that this cannot be the worst form of the offense because she only took 56 percent of the monetary amount covered by a felony three before it qualifies as a felony four. Appellant fails to acknowledge that R.C. 2929.12 allows the trial court to consider factors beyond the bare monetary value of the converted property, particularly factors that shed light on any human cost incurred. Moreover, Appellant does not consider the relative value of the monetary amount taken. AOI, as a small local business, could not sustain as great a financial loss as a larger company might have. Appellant's actions, as the trial court pointed out, jeopardized the business relationships AOI's owner had established over many years. AOI's several employees almost lost their jobs because Appellant's conduct threatened AOI's viability. The trial court acknowledged that such issues require consideration.
 {¶ 20} The trial court further acknowledged that AOI's owner suffered severe economic loss as well as a significant amount of emotional strain from Appellant's actions. Appellant may not have caused her victim physical harm but she made him suffer in other quite substantial ways. As previously stated, AOI's owner not only lost $280,000 but also nearly lost his business. As the trial court mentioned, Appellant used her position of trust within the company to facilitate her offense, thereby prolonging the disadvantageous consequences AOI and its owner suffered.
 {¶ 21} Furthermore, the trial court considered how Appellant used the money she converted from AOI. The trial court stated that she paid rent, paid utilities, bought items for her children, and generally used the money for everyday necessities. However, the trial court considered the fact that the record lacked any indication that Appellant and her husband, both employed during the ongoing offense, could not have afforded these necessities with their legitimate salaries.
 {¶ 22} The number and severity of the aggravating factors could be said to outweigh the fewer and less probative mitigating factors. Given the totality of the circumstances, the trial court could legitimately find that Appellant committed the worst form of the offense. Therefore, Appellant failed to provide clear and convincing evidence that the trial court abused its discretion when it found that Appellant committed the worst form of the offense.
 {¶ 23} Appellant also argues that recidivism is no longer likely since she has been exposed to previous and continual psychological treatment since the events giving rise to the instant offense. Appellant further argues that the trial court failed to properly consider her therapist's indication that she has improved greatly and is no longer a creature of her habits. Appellant contends that the trial court abused its discretion in finding that she posed the greatest likelihood of recidivism given the foregoing. This argument lacks merit.
 {¶ 24} R.C. 2929.12(D) requires that trial court consider several factors weighing towards an offender's likelihood of recidivism, including that the offender had been previously unfavorably terminated from a non-prison sanction, and/or that the offender shows no genuine remorse for the offense. R.C.2929.12(D). Likewise, R.C. 2929.12(E) requires that the trial court consider factors weighing against an offender's likelihood of recidivism, including that the offender committed the instant offense under conditions not likely to reoccur and that the offender shows genuine remorse. R.C. 2929.12(E). In fact, the trial court may find that an offender poses the greatest likelihood of recidivism if the R.C. 2929.12 recidivism factors indicating a greater likelihood of recidivism outweigh the factors that indicate a lesser likelihood of recidivism. R.C.2929.14(D)(2)(b)(i).
 {¶ 25} In this case, the trial court stated on the record at the final disposition that Appellant had previous convictions for theft, a misdemeanor in 1991 and a felony in 1996. Both involved facts similar to the instant case. Moreover, in 1998 Appellant was convicted of forgery, thereby violating the terms of her probation from the 1996 conviction. Appellant served a short prison term as a result. The trial court also emphasized that the instant offense began in 1999, also immediately after she was released from her prison term.
 {¶ 26} In addition to Appellant's criminal history of related offenses, Appellant's therapist's report indicated that she has resentment problems when in a subordinate position, she is capable of lying for the purpose of getting her way, that she is self-centered, and she lacks empathy for others. The report, however, does not indicate that Appellant suffers from any scientifically recognized psychological impairment that might have either aggravated or primarily caused such personal characteristics. While Appellant has pointed out that the report indicates that Appellant has responded favorably to treatment and that she is controlling her impulses now, such conclusions alone do not necessarily eviscerate the more negative aspects of the report. The trial court acknowledged that it had considered Appellant's perception of the report but disagreed that such mitigated the other factors weighing towards a great likelihood of recidivism. Taken in the context that the therapist's report also indicated that Appellant is capable of deception to accomplish her goals, the mitigating effect of Appellant's contentions could legitimately be viewed as trivial.
 {¶ 27} Furthermore, the trial court emphasized that Appellant's apparent contrition may be motivated by her desire to avoid prison rather than legitimate regret for her actions. Coupled with Appellant's history of similar criminal behavior, Appellant failed to demonstrate by clear and convincing evidence that the trial court abused it discretion when it found that Appellant posed the greatest likelihood of recidivism.
 {¶ 28} Given that both the R.C. 2929.14(C) findings must stand, the trial court cannot be said to have imposed a sentence contrary to law in Appellant's case. Appellant's sentence is, therefore, affirmed.
Grady, P.J. and Wolff, J., concur.
[1] This Court is mindful that the Fifth District in State v.Lint (Nov. 10, 2003), Stark App. No. 2003 CA 00159,2003-Ohio-6020 and the Eighth District in State v. Johnson
(Oct. 31, 2002), Cuyahoga App. No. 80533, 2002-Ohio-5960 have interpreted R.C. 2929.14(C) findings as disjunctive, and thereby have upheld maximum sentences when the trial court has found either that the offender has committed the worst form of the offense or that the offender poses the greatest likelihood of recidivism. This Court respectfully disagrees with such an interpretation. According to the basic canons of legislative construction, the word "and" is not interchangeable with the word "or" unless explicitly stated by the statute. R.C. 2929.14(C) does not state such a fluid reading of its provisions. This Court takes the position that had the drafters of this legislation desired such interchangeability, the drafters would have explicitly stated that intent. This Court therefore will require that both findings be present on the record in order to allow the trial court to sentence Appellant to a maximum prison term.